**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
JUAN LEGRAMANDI,

                              Plaintiff,

    -against-

FOX NEWS NETWORK, LLC,
JILL VAN WHY, individually
HARRIS FAULKNER, individually,
ANGELA MCGLOWAN, individually, and
MARSHEILA HAYES, individually,


                              Defendants.
-----------------------------------------------------------------------X

Civil Case No: 19-cv-9411

**COMPLAINT**

Plaintiff Demands a
Trial by Jury

Plaintiff, JUAN LEGRAMANDI, by and through his attorneys DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants FOX NEWS NETWORK, LLC, JILL VAN WHY, HARRIS FAULKNER, ANGELA MCGLOWAN, and MARSHEILA HAYES (collectively hereinafter referred to as "Defendants,") upon information and belief as follows:

**NATURE OF CASE**

Plaintiff, JUAN LEGRAMANDI (hereinafter referred to as "Plaintiff" and/or LEGRAMANDI"), complains pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, sexual orientation

discrimination,   race discrimination, national origin and ethnicity discrimination, age discrimination, hostile work environment, retaliation and wrongful termination by Defendants.


## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under 42 U.S.C. §§ 1981 and 1983, Title VII.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state and city law claims under 28 U.S.C. § 1367.

3. On or about April 29, 2019, Plaintiff, JUAN LEGRAMANDI, submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2019-03405.

4. On or about July 16, 2019, Plaintiff, JUAN LEGRAMANDI, received a Right to Sue Letter from the EEOC for federal charge number 520-2019-03405.  This lawsuit has been filed within 90 days of Plaintiff's receipt of the Right to Sue Letter.

5. Plaintiff satisfied all administrative prerequisites and is filing this case within the applicable Statute of Limitations.

6. Venue is proper in this court, as the events giving rise to this action arose in New York County, within the Southern District of New York.

## PARTIES

7.  At all times material, Plaintiff, JUAN LEGRAMANDI, ("Plaintiff" or "LEGRAMANDI") was and is an individual homosexual male of Colombian heritage who is a resident of the State of New York, Westchester County.

8.  At all times material, Defendant, FOX NEWS NETWORK, LLC, (hereinafter referred to as "FOX NEWS") was and still is a foreign limited liability corporation authorized and existing under the laws of the State of Delaware and is licensed to do business in New York and which engages in business in New York County, NY.

9.  At all times material, Defendant, JILL VAN WHY (hereinafter referred to as "VAN WHY"), was and still is a Senior Production Operations Manager at Defendant, FOX NEWS. Defendant VAN WHY held supervisory authority over Plaintiff and as Plaintiff's direct supervisor VAN WHY exercised control over material aspects of Plaintiff's employment including hiring and firing power over Plaintiff.

10. At all times material, Defendant, HARRIS FAULKNER (hereinafter referred to as "FAULKNER"), was and still is was and is a Television Host with Fox News. HARRIS held substantial control and authority over Plaintiff's employment.

11. At all times material, Defendant, ANGELA MCGLOWAN (hereinafter referred to as "MCGLOWAN"), was and is a Political Commentator with Fox News. MCGLOWAN held substantial control and authority over Plaintiff's employment.

12. At all times material, Defendant MARSHEILA HAYES (hereinafter referred to as "HAYES") was the Director of Campus Programs & Diversity Outreach at Fox News and is the Vice President of Diversity and Inclusion at Fox Corp. Hayes held supervisory authority over

Plaintiff, controlling many of Plaintiff's job duties. Hayes held the power to hire and fire Plaintiff.

13. At all times material, Defendants FOX NEWS, VAN WHY, FAULKNER, MCGLOWAN and HAYES are subjected to Federal law, New York State Executive Law, and New York City Administrative Code.

14. At all times material, Defendant FOX NEWS was Plaintiff's employer.

## STATEMENT OF FACT

15. On or about January 10, 2017 Defendants hired Plaintiff as a Makeup Stylist at Defendant FOX NEWS' New York City studios.

16. On or about May 21, 2017, while Plaintiff was working with a client, Fox News' Employee Gavina Valdez (hereinafter referred to as "Valdez"), charged into the work area. Immediately following her abrupt entrance into the area, Valdez began harassing and berating Plaintiff.

17. Loudly and with her hands gesturing violently in an attempt to deliberately undermine and cause Plaintiff embarrassment in front of his client, Valdez aggressively reprimanded Plaintiff for choosing to work on a "less important client" before another who was also present.

18. Before Plaintiff was able to offer any form of an explanation, Valdez began insulting him and, amongst other things, stated "**YOUR AGE MAKES YOU INEXPERIENCED AND UNABLE TO KNOW WHAT'S BEST**" and that "**YOU [Plaintiff] ARE A DIVA BUT SINCE I'M THE ONE WITH TWENTY-PLUS YEARS OF EXPERIENCE AS A SALON OWNER, I'M THE ONLY DIVA ALLOWED HERE**", or words to that effect.

19. Plaintiff complained about this incident to Defendant VAN WHY. Specifically, Plaintiff complained that Valdez berated, insulted and made discriminatory comments to Plaintiff based on Plaintiff's age, sex and sexual orientation. No subsequent remedial action was taken, and Defendants never followed up on the complaint.

20. Several days later Plaintiff was informed that he was required to attend a meeting with Defendant VAN WHY. At this meeting, VAN WHY interrogated Plaintiff, inquiring whether there was "anything romantic" occurring between Plaintiff and Fox News Senior Judicial Analyst, Judge Andrew Napolitano (hereinafter referred to as "Napolitano").

21. Defendant VAN WHY made discriminatory insinuations stemming from Plaintiff's sexual orientation during this conversation.

22. When pressed by Plaintiff as to the purpose of the meeting, Defendant VAN WHY made a vague reference to rumors in the workplace about an attempt by Napolitano to kiss Plaintiff, which Plaintiff unequivocally dismissed as a patent falsehood.

23. Defendants used this meeting as an opportunity to harass and discriminate against Plaintiff on the basis of his sexual orientation.

24. On or about August 29, 2017 Plaintiff was instructed by management to provide Fox News' Employee Bianca Espinoza (hereinafter referred to as "Espinoza") with feedback on her work. Plaintiff and Espinoza had been booked for the female and male talent, respectively. Despite Plaintiff's coaching, Espinoza's male clients were unhappy with her work and, consequently, Plaintiff was offered Espinoza's position.

25. On or about October 5, 2017 Defendants hired Plaintiff as a permanent Staff Makeup Stylist, a promotion from his freelance position.

26. On or around February, 2018, Plaintiff and another openly gay stylist were in the Fox News studio green room. Defendant MCGLOWAN entered the studio's green room. Defendant MCGLOWAN walked past Plaintiff and the other employee and stated, with disgust, in reference to Plaintiff and the other openly gay stylist **"UGH! IT'S LIKE SODOM AND GOMORRAH IN HERE!"[1]**

27. McGlowan's highly offensive and bigoted discriminatory comment was made in reference to the sexual orientation of both Plaintiff and the other stylist present.

28. Shortly following this incident, Plaintiff complained to Defendants' Human Resources representatives about the unprofessional, demeaning and discriminatory comment he and his coworker were subjected to by Defendant MCGLOWAN.

29. Despite Plaintiff's's complaint, Defendants took no apparent corrective action in response.

30. On or around September 16, 2017, Plaintiff and another Fox News stylist Cameron Lesiege (hereinafter referred to as "Lesiege") were tasked with working on hair and make-up for Defendant FAULKNER. While working on Defendant FAULKNER's hair, a news story involving Hispanic women attempting to cross the United States/Mexico border with their children began airing on one of the nearby monitors. In response to this story, Faulkner launched into a xenophobic and anti-Latino racist tirade, stating, *inter alia*, "**HISPANIC WOMEN ARE SO IGNORANT!**"

31. Plaintiff, taken aback and offended by this unexpected, unprofessional, racially discriminatory rant, objected and indicated that his mother is a Hispanic woman and that he was born in Colombia.

---

[1] Sodom and Gomorrah is a biblical reference commonly invoked as scriptural justification for homophobia and intolerance toward members of the LGBT+ community.

32. In response Defendant FAULKNER sneered to Plaintiff: "**YOUR FAMILY IS FROM A THIRD WORLD COUNTRY!**"

33. Soon after, Plaintiff made a complaint to Human Resources about the racially and ethnically discriminatory comments he had been subjected to by Defendant FAULKNER.

34. Despite Plaintiff's complaint, Defendants took no corrective action in response to Defendant FAULKNER's discriminatory statements about Latinas and Colombians.

35. Plaintiff also requested to Defendant HAYES that Plaintiff be assigned to another anchor due to the offensive discriminatory comments made by Defendant FAULKNER.  Defendant HAYES refused to reassign Plaintiff and required that Plaintiff continue working with Defendant FAULKNER.

36. Defendant HAYES regularly granted requests of other stylists to be reassigned to different on-air talent.  Defendant HAYES forced Plaintiff to keep working with Defendant FAULKNER despite Plaintiff's justified request to be reassigned.

37. Defendant HAYES refused Plaintiff's request (the type of request she routinely granted for other stylists) because of Plaintiff's race, national origin, sex, sexual orientation and because Plaintiff complained of discrimination by Defendant FAULKNER.

38. Numerous other stylists who requested to be assigned to work with other anchors had their requests routinely granted.

39. In or around May, 2018, without having signed up for any email lists or services, Plaintiff began to receive direct emails with content specifically targeted towards employees who identify as lesbian, gay, bisexual and transgender (hereinafter referred to as "LGBT+") members of staff at Fox News. Plaintiff confirmed with another LGBT+ member of the staff, Lesiege, that he had also started receiving the emails without having signed up.

40.  Plaintiff and Lesiege confirmed with their heterosexual co-workers that they had not been receiving the same unsolicited emails.

41. Defendants discriminated against Plaintiff by harassing him with a subscription to unsolicited emails, targeted at him due to his sexual orientation.

42. Shortly thereafter, while working together in the Fox News studio Plaintiff was approached by a female stylist named Nicole Cerro (hereinafter referred to as "Cerro") with the proposition that she be allowed to shadow Plaintiff. Plaintiff indicated that he didn't think being shadowed would be appropriate, given that he received no instructions from management to do so. In response Cerro became angry and stated "**YOU'RE JUST ANOTHER ONE OF THE CATTY COLOMBIANS. YOU'RE JUST LIKE THE REST OF THEM!**", or words to that effect.

43. Cerro's comments were motivated by an apparent discriminatory animus against Colombians, people of Colombian heritage and homosexual males.

44. Around early June 2018, Plaintiff distributed 21st Century Fox (Fox New's parent company) LGBT+ "pride" t-shirts emblazoned with a rainbow colored Fox logo that he had been given by another Fox News Anchor.

45. In apparent retaliation for distributing the t-shirts, Defendants began to enforce a discriminatory dress code in which female members of the staff were allowed to wear skirts and dresses to work while the male co-workers were required to wear long pants and prohibited from wearing shorts.  However this dress code was only enforced against Plaintiff and no other employees.

46. All female employees were allowed to wear shorts, dresses and skirts in the workplace, however Plaintiff was instructed that because he is a male he would only be allowed to wear pants, and that wearing short was unacceptable.

47. On or about June 6, 2018 Plaintiff complained to Defendants via email about Defendants' dress code policy, specifically complaining that the dress code policy was discriminatory on basis of sex and gender, and that this dress code was being selectively enforced against Plaintiff.

48. A few days following this complaint, Plaintiff's manager, Defendant VAN WHY required Plaintiff to attend a meeting with her. During the meeting, VAN WHY threatened Plaintiff for making a written complaint about gender discrimination.  Defendant VAN WHY told Plaintiff **"EVERYONE IS REPLACEABLE. *YOU* ARE REPLACEABLE.**

49. The threatening content of Defendant VAN WHY's statement was intentional and unmistakable.

50. Defendant never gave a written response to Plaintiff's complaint about discrimination.

51. Further, Plaintiff observed that the employee handbook was never revised to reflect any change to the discriminatory dress code.

52. On or about September 16, 2018, Defendant FAULKNER attempted to shift the responsibility for cancelling a number of events scheduled for that evening by imposing the blame on Plaintiff. Faulkner announced to the staff members present: **"YOU CAN'T LEAVE DECISIONS TO YOUNG PEOPLE"**, or words to that effect, in a discriminatory reference to Plaintiff and his co-workers, all of whom were under thirty (30) years old.

53. Soon after, Espinoza became unnecessarily confrontational with Plaintiff. Plaintiff attempted to diffuse the situation by telling Espinoza that he didn't want to engage in a confrontation and stated that he was leaving leave the studio. Espinoza became irate, shouting at Plaintiff in front

of numerous coworkers, **"I'M NOT UNCOMFORTABLE. YOU'RE THE ONE MOVING, I'M STRAIGHT!"**, or words to that effect. Espinoza then proceeded to move closer to Plaintiff shouting: **"YOU TALKED SHIT BEFORE, SAY IT TO MY FACE"**, or words to that effect.

54. Espinoza proceeded to call Plaintiff "**DRAMATIC AND HYPED UP**", or words to that effect when he made further attempts to leave the studio. When Plaintiff indicated that he wanted to leave the room because Espinoza's aggression was making him uncomfortable Espinoza began insulting Plaintiff, calling him, *inter alia*, **"THE CATTIEST" "A LIAR" "IMMATURE"** and "**A CHILD**" in Spanish.

55. Espinoza then proceeded to threaten Plaintiff telling him **"KEEP MY NAME OUT YOUR MOUTH IF YOU DON'T WANT ANY MORE PROBLEMS!"** or words to that effect.

56. At this point, feeling distressed, Plaintiff attempted to leave the room. However, Espinoza advanced upon him and physically prevented him from leaving by standing in his way.

57. Plaintiff made several further attempts to leave but Espinoza refused to get out of his way to access the exit. Plaintiff was virtually held hostage and subjected to discriminatory homophobic comments, insults, and threats in plain view of Plaintiff's co-workers and Defendants' employees and clients.

58. The situation was finally defused and Plaintiff was only able to leave the room when one of his co-workers entered the room and demanded that Espinoza stop bullying Plaintiff. Plaintiff, fearing for his safety, immediately left the room.

59. Plaintiff reported this incident to HR, and was told by HR that he handled the situation properly.

60. Soon after, Defendants seized upon the opportunity to use the incident as pretext to terminate Plaintiff for his recent written complaint about gender discrimination as well as for his previous complaints to HR regarding discriminatory and homophobic comments by Defendants FAULKNER and MCGLOWAN.

61. Despite Fox News' HR previously informing Plaintiff that he handled the situation wherein he was berated and subjected to homophobic insults by Espinoza correctly and stating that Plaintiff had done nothing wrong, Defendants VAN WHY and HAYES summarily terminated Plaintiff's employment.

62. Numerous other of Defendants' employees have had similarly confrontational interactions with Espinoza but were not verbally assaulted by Espinoza with homophobic rhetoric.

63. Numerous other of Defendants' employees have had similarly confrontational interactions with Espinoza but were not terminated as a result.

64. Defendants terminated Plaintiff because he made complaints about discrimination based on his national origin, ethnicity, sex and sexual orientation and because Plaintiff was accosted by Espinosa with abusive homophobic comments.

65. Upon information and belief, Espinoza remains employed by Defendant FOX NEWS and was not terminated for berating Plaintiff with discriminatory homophobic insults.

66. Defendants discriminated against Plaintiff because of his age, his sex and gender, his sexual orientation, and because he complained or opposed the unlawful conduct of Defendant(s) related to the above protected classes.

67. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

68. As a result of Defendant's unlawful and discriminatory actions, Plaintiff became so physically and emotionally distressed that he is having difficulty eating and sleeping.

69. As a result Defendant's unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to his professional reputation.

70. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

71. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

72. The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

73. Defendant's conduct constitutes a continuing violation. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

74. Defendant hereby demands reinstatement to his original position.

### AS A FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

76. Title VII states in relevant part as follows:

> "(a) Employer practices:

> It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

77.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex and gender and for creating a hostile work environment on the same basis.

78.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by discriminating against Plaintiff as set forth herein because of Plaintiff's sex, race and national origin.

79.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

**AS A SECOND CAUSE OF ACTION FOR**
**RETALIATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

80.   Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

81.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

82.  Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

83.  Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

**AS A THIRD CAUSE OF ACTION**
**DISCRIMINATION AND RETALIATION IN VIOLATION**
**OF 42 U.S.C. §§ 1981 and 1983**
**<u>(Against All Defendants)</u>**

84.  Plaintiffs repeat and re-allege each and every allegation made in the above paragraphs of this Complaint.

85.  42 U.S.C. Section 1981 states as follows, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

86.  Section 1981 further states that, "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

87.  Title 42 U.S.C. § 1983 provides in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

88. Defendants discriminated against Plaintiff in violation of his rights as afforded by the Civil Right Act of 1866, 42 U.S.C. 1981 and 42 U.S.C. 1983.

89. By the conduct described above, Defendants intentionally deprived Plaintiff, a Hispanic male, of the same rights as are enjoyed by non-Hispanic citizens, to the creation, performance, enjoyment and all benefits and privileges of his employment relationship with Defendants, and created a hostile work environment for Plaintiffs.

90. As a result of Defendants' discrimination in violation of Sections 1981 and 1983, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling his to injunctive and equitable monetary relief, and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling him to compensatory damages.

91. Defendants acted with malice or reckless indifference to the rights of Plaintiff thereby entitling him to an award of punitive damages.

92. To remedy the violations of the rights of Plaintiffs secured by Sections 1981 and 1983, Plaintiffs request that the Court award the relief prayed for below.

### AS A FOURTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### NEW YORK STATE LAW
### (Against All Defendants)

93. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

94. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For

an employer or licensing agency, because of an individual's **age**, **race**, creed, color, **national origin**, **sexual orientation**, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (emphasis added)

95. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his age, race, national origin, sexual orientation, sex and by creating a hostile work environment and by wrongfully terminating Plaintiff's employment.

96. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

## AS A FIFTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER
## NEW YORK STATE LAW
## <u>(Against All Defendants)</u>

97. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

98. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

99. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

100. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS AN SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

101. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

102. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

103. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

104. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

105. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived **age**, **race**, creed, color, **national origin**, **gender**, disability, marital status, **sexual orientation** or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

106. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of his age, race, national origin, gender and sexual orientation.

107. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

## AS A EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

108. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

109. The New York City Administrative Code Tide 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…."

110. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(7) by discriminating against Plaintiff because of his opposition to the unlawful employment practices of Defendants as Plaintiff's employer.

## AS AN NINTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

111. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

112. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

113. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A TENTH CAUSE OF ACTION
### FOR INTERFERENCE WITH PROTECTED RIGHTS UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

114. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

115. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

116. Defendants violated the above section as set forth herein.

## AS A ELEVENTH CAUSE OF ACTION
## FOR SUPERVISORY LIABILITY UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

117. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

118. Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

119. Defendants violated the above section as set forth herein.


**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a jury trial on all issues to be tried.


Dated:  New York, New York
        October 10, 2019


                                    **DEREK SMITH LAW GROUP, PLLC**


                          By:     _____

                                    Seamus Barrett, Esq.
                                    One Penn Plaza, Suite 4905
                                    New York, New York 10119
                                    (212) 587-0760